**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

DARLENE KING,      *
            *
  Plaintiff,      *
            *
    v.       *   Civil Action No. AW-08-3393
            *
LOWE'S HOME CENTERS, INC.,  *
            *
  Defendant.     *
            *

**************************************************************************

<u>**MEMORANDUM OPINION**</u>

Plaintiff Darlene King ("King") brings this action against Lowe's Home Centers, Inc.

("Lowe's"), alleging discrimination on the basis of race and age in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Age Discrimination in

Employment Act of 1967 as amended, 29 U.S.C. §§ 621, *et seq.* ("ADEA").  Currently pending

before the Court is Defendant's Motion for Summary Judgment (Docket No. 17).  The Court has

reviewed the entire record as well as the pleadings with respect to this motion and finds that no

hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2008).  For the reasons stated more

fully below, the Court will GRANT Defendant's Motion for Summary Judgment.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

In 2003, King, an African-American woman, began working for Lowe's Home Center

store in Gaithersburg, Maryland, as a Customer Service Associate in the Installed Sales

Department.  In March 2005, Lowe's promoted her to Installed Sales Manager (ISM).

During her tenure as an ISM, King received multiple disciplinary actions from her supervisors.  On August 17, 2005, she received an Initial Notice[1] for her poor job performance when she failed to address specific issues that her supervisors had brought to her attention.  King refused to sign the Initial Notice.  On November 20, 2005, King received a second disciplinary action in the form of a Written Notice[2] when she failed to collect total payment before an installation, which was in direct violation of a company policy.

In February 2006, Robert Yeatts ("Yeatts") became the store manager and one of King's supervisors at the Gaithersburg Lowe's store.  In March 2006, Dominik LeBeau ("LeBeau") arrived at the Gaithersburg location as the store's sales manager and King's direct supervisor.  Both Yeatts and LeBeau were Caucasian males and under the age of 40 at the time.  Shortly after the managers arrived, both managers began noticing management problems in the Installed Sales Department.

A few months later, on May 17, 2006, Yeatts and LeBeau issued an Initial Notice discipline to King for her poor job performance and failure to maintain basic ISM expectations.  King objected to the disciplinary action, refused to sign it, and submitted a written statement of her objections.  In her written objection, King argued that the Installed Sales Department was underperforming for reasons beyond her control.  In particular, she noted that the Installed Sales Department was short-staffed and in need of more personnel.

The Initial Notice stated that Yeatts and LeBeau would follow up on King's job performance in two weeks.  Two weeks later, Yeatts and LeBeau found that King was continuing

---

[1] Per Lowe's Commendation and Corrective Action Procedures, employees receive an Initial Warning first depending on the type of violation that has occurred.  Here, Plaintiff received an Initial Notice based on her Class "C" violation for poor job performance.

[2] Per Lowe's Commendation and Corrective Action Procedures, employees receive a Written Notice for either a first-time Class "B" violation or repeated offenses of Class "C" violation  previously addressed through an initial counseling.  Here, Plaintiff received a Written Notice presumably for her negligence in the performance of assigned duties, which constitutes a Class "B" violation.

to have problems with her responsibilities and with managing her subordinates.  On June 2, 2006, Yeatts and LeBeau issued King a Written Notice for her continued failure to maintain basic ISM expectations.  The Written Notice specifies King's alleged failure to maintain empty job site inspection books, resolve customer complaints, and address installer wait times.  Each of the named actions was in violation of Lowe's ISM Job Description and Performance Guide. King refused to sign the Written Notice.

On June 16, 2006, Yeatts and LeBeau issued King a Final Notice for her continued failure to carry out the basic functions of an ISM.  In the Final Notice, Yeatts and LeBeau mentioned King's failure to keep the office tidy, maintain install binders in departments, walk the departments for signage, and resolve problematic installer wait times.  Upon receiving this Final Notice, Yeatts and King both agreed that King would laterally transfer to the Commercial Sales Specialist position.  King claims that she was forced to accept the transfer out of fear of losing her job.  Although her transfer was technically a demotion, King was kept at the same pay grade.

Lowe's then promoted Brian Adams ("Adams"), a Caucasian male under 40, to King's former ISM position.  King claims that Yeatts and LeBeau offered Adams her position before she was actually demoted.  As the new ISM, Adams had performance problems similar to King's and was disciplined in accordance with Lowe's Commendation and Corrective Action Policy. On August 14, 2006, Adams received a Written Notice for failing to show up to work, which was in violation of Lowe's policies.  On August 21, 2006, Adams again violated one of Lowe's policies and received a Final Notice by Yeatts and LeBeau.  A few days later, Adams resigned from his position as ISM.

Matt Cain ("Cain"), a Caucasian male under 40, then replaced Adams in the ISM position.  Cain also suffered from poor performance problems as an ISM and was disciplined in accordance with Lowe's Commendation and Corrective Action Policy.  After receiving an Initial Notice and a Final Notice from his supervisors, Cain was eventually terminated from the ISM position on May 23, 2007, for his poor performance and failure to meet ISM expectations.

In October 2006, a few months after working as a Commercial Sales Specialist, King was encouraged to apply for an open Delivery Manager position in the Delivery Department.  King did not want the position, but Yeatts insisted she take the position.  She reluctantly agreed to take the position as Delivery Manager and was given a pay raise.  Shortly after King assumed the Delivery Manager position, Lowe's terminated two African-American delivery drivers.  King did not participate in their terminations.  King contends that Lowe's used her race as an African-American Delivery Manager to facilitate the termination of the delivery drivers and to counter race discrimination claims arising from that action.

As a Delivery Manager, Yeatts began noticing similar management problems from when King was an ISM.  On January 4, 2007, King received a Written Notice from Yeatts for her failure to fulfill basic responsibilities as a Delivery Manager.  According to the Written Notice, King had authorized a load puller to take a day off and had not scheduled a replacement for that day, which was in violation of Lowe's Delivery Manager Job Description and Performance Guide.

On February 12, 2007, Yeatts issued King a Final Notice for her failure to perform her job duties.  The Final Notice stated King's alleged failure to obtain advanced approval from senior management before authorizing an employee's request for time off.  It also indicated that

4

she had rescheduled a delivery without updating the master delivery sheet and that Lowe's had received a customer complaint as a result of her omission.  King refused to sign the Final Notice.

In March 2007, Operations Manager Christine Kuhn ("Kuhn") received two customer complaints relating to King's alleged failure to set up deliveries properly.  The customer disputes were never resolved, so Kuhn had to arrange for their respective deliveries.  On March 26, 2007, Kuhn and Yeatts issued a Termination Notice to King for the two delivery-related customer complaints and her overall inability to fulfill her job responsibilities as Delivery Manager.  On March 29, 2007, King was terminated from Lowe's.

Following her termination, King contacted Lowe's Area Human Resource Manager, Pam Legg, and Regional Human Resource Director, Terry Knox, alleging discriminatory treatment and asking for an explanation for her termination.  Knox asked King to submit a written statement detailing her complaints, which King never submitted.

On April 9, 2007, King submitted an intake questionnaire to the Equal Employment Opportunity Commission ("EEOC").  On June 13, 2007, King filed a Charge of Discrimination with the Montgomery County Office of Human Rights, alleging racial and age discrimination.  On June 22, 2007, King filed a Charge of Discrimination to the EEOC, also alleging racial and age discrimination.   After investigating King's claims, the EEOC concluded it did not find evidence of any statutory violations and issued King a Dismissal and Notice of Rights on May 2, 2008.

On August 1, 2008, King filed a Complaint in the Circuit Court for Montgomery County seeking $5,000,000 in damages against Lowe's.  On December 17, 2008, Lowe's filed a Notice of Removal to this Court.  The Court has jurisdiction of this matter under 28 U.S.C. § 1331 as a federal question and under 28 U.S.C. § 1332 for diversity of citizenship.

The parties have had an opportunity to conduct discovery.  On July 6, 2009, Lowe's filed a Motion for Summary Judgment.

## II: STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences.  *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998).  Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## III: ANALYSIS

King asserts claims under the ADEA and Title VII for age and race discrimination relating to her demotion from the ISM position to the Commercial Sales Specialist position, her promotion to Delivery Manager, and termination as Delivery Manager.

After reviewing the record, the Court does not believe that either of King's claims should survive summary judgment. The record overwhelmingly shows that King's poor performance, and not a discriminatory intent, caused both her demotion and termination. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

## A.   Charge of Discrimination: Statutory Filing Limitation

On April 9, 2007, King filled out an intake questionnaire with the EEOC regarding her discrimination claims against Lowe's. An official Charge of Discrimination was filed on June 22, 2007. Lowe's contends that King's claims relating to her demotion from the ISM position to the Commercial Sales Specialist position are barred by the statute of limitations because her charge was filed more than 300 days after her demotion. It is undisputed that King's Charge of Discrimination is dated June 22, 2007, which exceeds the 300-day period with which King had to file her discrimination complaint with the EEOC.[3] The alleged discriminatory act—her demotion—took place on June 16, 2006, when King agreed to step down from her position as an ISM; after her demotion, King had until April 12, 2007 to file her charge. What remains in dispute is whether King's intake questionnaire constitutes a charge for the purposes of her ADEA and Title VII claim.

Under federal law, an employee bringing suit under Title VII and/or the ADEA must first "file" a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d). The applicable time period for filing a charge in the state of Maryland is 300 days. If an employee does not submit a timely EEOC charge, then the employee may not proceed to court. 42 U.S.C. 2000e-5(f)(1).

---

[3] Maryland is a deferral state, so all charges must be filed with the EEOC or other fair employment practice agency within 300 days of the alleged discrimination. 28 U.S.C. § 626(d)(2) (2006).

The question of whether intake questionnaires constitute charges was considered in the Supreme Court case *Federal Express Corp. v. Holowecki*, 128 S. Ct. 1147 (2008).  In *Holowecki*, the Court held that a filing with the EEOC would be deemed a charge if it could "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."  *Holowecki*, 128 S. Ct. at 1158.   The Court held in *Holowecki* that an intake questionnaire, supported by a six-page affidavit stating the relief sought by the employee,[4] sufficiently satisfied the charge requirement because it could be reasonably construed to constitute a request for agency action.  *Id.* at 1160.

In the instant case, King's intake questionnaire does not rise to the level of a "charge" for the purposes of her ADEA and Title VII claims.   Unlike the employee in *Holowecki* who submitted a six-page, detailed affidavit that clearly identified the parties, the facts, and the allegations against the employer, the intake questionnaire here does not contain such detailed information.  The questionnaire contains the parties' contact information and some general facts regarding her claims against Lowe's, but taken together, the information contained in the questionnaire cannot be reasonably construed to state a clear and affirmative request for agency action as required under *Holowecki*.

Further, the questionnaire does not state the relief she is seeking, nor does it ask the EEOC to take action against Lowe's; instead, the questionnaire states King's request for an interview with the EEOC to better explain the nature of her claims.  The intake questionnaire can thus be construed as more of an informative document than a charging document as it contains very basic and general information regarding her claims.   Under *Holowecki*'s charge requirements, it cannot be construed as a request for assistance from the EEOC.

---

[4] The affidavit requested the EEOC to "please force Federal Express to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment."  *Federal Express Corp. v. Holowecki*, 128 S. Ct. 1147, 1159-60 (2008).

The Court concludes that the intake questionnaire does not constitute a charge document for the purposes of King's ADEA and Title VII claims.  King's claims relating to her demotion are thus barred under Maryland's 300 day requirement.

**B.**     **ADEA**

Even though King's claims with regard to her demotion are time-barred, the Court will address King's allegation that Lowe's discriminated against her on the basis of her age when Yeatts demoted her.  King contends that Lowe's discriminated against her by forcibly removing her from the ISM position and subsequently replacing her with Brian Adams, who was a white male under the age of 40.   She alleges that her demotion was part of a store-wide policy that Yeatts was implementing, which involved the replacement of older employees with younger employees.  Lowe's argues that King has failed to make a prima facie case for age discrimination because King's performance as an ISM did not meet their legitimate expectations.

Because Plaintiff does not offer direct evidence of age discrimination, this claim is analyzed under the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  *See  Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 283, 285 (4th Cir. 2004) (en banc) (applying *McDonnell Douglas to* ADEA claims).   Under this scheme, the plaintiff must first present a prima facie case of discrimination.  *McDonnell Douglas*, 411 U.S. 802.   To establish a prima facie case of age discrimination using circumstantial evidence under the ADEA, King must show that (1) she was a member of the protected class (i.e. at least 40 years old); (2) she suffered an adverse employment action; (3) at the time of her demotion, she was performing her job at a level that met her employer's legitimate expectations; and (4) following her demotion, she was replaced by someone who was

either outside the protected class or substantially younger than the plaintiff.  *Kess v. Mun. Employees Credit Union of Balt., Inc.*, 319 F. Supp. 2d 637, 648 (D. Md. 2004).

If the plaintiff makes this showing, a presumption of illegal discrimination arises, and the burden of production shifts to the employer, "who must articulate a non-discriminatory reason for the difference in disciplinary enforcement." *Cook v. CSX Transportation Corp.,* 988 F.2d 507, 511 (4th Cir. 1993). If the employer articulates such a reason, "the burden shifts back to the plaintiff to demonstrate that the employer's reasons are not true but instead serve as a pretext for discrimination." *Id.*  To survive summary judgment, plaintiff must then show that defendant's non-discriminatory explanation is pretextual and unworthy of credence, or offer "other forms of circumstantial evidence sufficiently probative" of discrimination.  *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004).  The plaintiff must present admissible evidence beyond self-serving opinions or speculation.  *See Cain v. Waste Mgmt., Inc.*, 115 F.Supp. 2d 568, 574 (D. Md. 2000).

The only element of the ADEA prima facie case which is contested here is whether King sufficiently established that she was performing her duties at a level that met Lowe's legitimate expectations at the time of her demotion.  As to this element, Lowe's has proffered sufficient evidence to convince this Court that King was not performing satisfactorily in her position as an ISM.  Nothing in the record indicates that King was competently executing her duties as an ISM. From the beginning of her tenure as ISM in March 2005 to the time she was demoted to the Commercial Sales Specialist position in June 2006, she received a total of five documented disciplinary notices for either violating company policies or failing to perform basic functions of the ISM position.  Each of these notices clearly lists management's reasons for taking disciplinary action against King.  For instance, in her fourth disciplinary notice, King was written

up in part for her failure to follow-up with customer complaints in a timely manner, a direct violation of one of the requirements listed in Lowe's Performance Guide for ISMs.

King has not proffered any admissible evidence to challenge the five notices issued to her during her time as ISM.  King merely states her disagreement with the disciplinary actions against her and shifts accountability to factors outside of her role as an ISM.  King's evidence is limited to her own opinions and speculations that she was performing satisfactorily in her role as an ISM, which are insufficient to overcome a motion for summary judgment.  The record instead shows that the decision to demote King was not based on her age, but on documented complaints regarding her job performance and ability to fulfill her responsibilities as ISM per the company's Job Description and Performance Guide.  Accordingly, King has not established a prima facie case of age discrimination.  Even if King had established a prima facie case, Lowe's clearly has presented legitimate, non-discriminatory reasons for demoting King.

Further, King has not presented any evidence to show that Lowe's legitimate, non-discriminatory reasons for her demotion were pretextual.  King's arguments are unsubstantiated by evidence and limited to her own opinions about the quality of her work and the reasons behind her multiple disciplinary actions.  King's allegations that her successor, Brian Adams, was offered her position before her Final Notice is not only unsupported by evidence, but also unrelated to Lowe's proffered reasons for demoting King.  King's allegations that Adams' successor, Matt Cain, engaged in inappropriate workplace behavior are also wholly unrelated to King's work performance.  King's belief that Yeatts was more concerned with his own career ambitions than with improving the store is irrelevant for the purposes of disproving Lowe's proffered reasons for demoting King.  Additionally, King has not proffered any evidence to

support her claim that, at the time of her demotion, Yeatts was implementing a store-wide policy of replacing older employees with younger employees.

Taken together, King's arguments do not support a finding that Lowe's legitimate reasons for demoting King were pretextual.   Therefore, the Court will grant Defendant's motion for summary judgment on the ADEA claim.

### C.      Title VII Claim: Race Discrimination

King contends that her removal from the ISM position, her promotion to Delivery Manager, and her ultimate termination from Lowe's were all driven by improper racial motives. Lowe's argues that King cannot establish a prima facie case for racial discrimination because King did not perform her job in a satisfactory manner and similarly situated employees were not treated differently.

Like King's ADEA claim, a claim of discrimination under Title VII lacking direct evidence is analyzed under the *McDonnell Douglas* framework, which requires the plaintiff to first present a prima facie case of discrimination.  *See Taylor v. Va. Union University.*, 193 F.3d 219, 230 (4th Cir. 1999) (applying *McDonnell Douglas* to discrimination claims brought under Title VII).   To establish a prima facie case, King must show that (1) she is a member of a protected class; (2) that she was qualified for the job and that her job performance was satisfactory; (3) that in spite of her qualifications and performance, she suffered an adverse employment action; and (4) that she was treated differently from similarly situated employees who are not members of the protected class.  *McDonnell Douglas,* 411 U.S. at 802.   If the plaintiff meets this burden, then the burden shifts to the Defendant to proffer a "legitimate, nondiscriminatory reason" for the challenged conduct.  *Id.*   Upon this showing, the burden then

shifts back to the plaintiff to proffer evidence that the employer's reasons are actually a pretext for a discriminatory purpose.  *Id.* at 804.

Since King, an African-American, is a member of a protected class, the only elements in dispute are whether she was qualified for the job and performed her job satisfactorily, whether she suffered an adverse employment action, and whether she was treated differently from similarly situated employees outside of the protected class.

King has failed to establish her qualifications as either an ISM or Delivery Manager.  The disciplinary actions on the record indicate that King was unable to carry out basic functions of her managerial role in the two departments.  Regardless of whether she felt that she was doing her best, the record shows that she received a total of eight written notices for either her poor job performance or conduct in violation of Lowe's store policies.  King has not proffered any evidence outside of her own opinions to demonstrate that she was performing her jobs as an ISM and Delivery Manager in a satisfactory manner.

King asserts that her race was improperly used when she was promoted to Delivery Manager.  Even assuming, *arguendo*, that Lowe's reasons for promoting her were discriminatory, her allegation does not satisfy the adverse action element because her promotion involved a pay raise and a move up from a non-managerial to managerial position.  Any claims related to her "wrongful promotion" thus do not rise to the level of an adverse employment action and cannot be raised in the instant action.

Regardless of whether King was performing her job in a satisfactory manner or if the promotion was an adverse action, nothing on the record shows that similarly situated employees were treated differently.  Some of King's predecessors and successors, who were all non-black employees in either the ISM or Delivery Manager position, were disciplined in the same manner

in accordance with Lowe's Commendation and Corrective Action Policy.   Other non-black managers received written disciplinary notices for similar management problems.   For instance, Brian Adams, King's immediate successor in the ISM position, received similar disciplinary actions from Yeatts and LeBeau for his failure to comply with company policies.   After receiving a Final Notice from both supervisors, Adams resigned from his position as ISM.   Adam's replacement, Matt Cain, was also written up on multiple occasions for poor job performance and failure to meet ISM expectations.   After receiving a Final Notice from his supervisors, Cain was eventually terminated from his ISM position.   Like King, Cain was terminated following a disciplinary action received while in Final Notice status.   In light of the similar disciplinary treatment that other non-black, similarly situated employees received for similar managerial problems, King's claim that she was treated differently fails as a matter of law.

Even if King had established a prima facie case for racial discrimination under Title VII, Lowe's has presented legitimate, non-discriminatory reasons for demoting King from her ISM position and for terminating her from her Delivery Manager position.   King's evidence is limited to her own, unsupported opinions about her work performance and speculative inferences about Lowe's actions.   With regard to her promotion to Delivery Manager, King argues that she was promoted so that Lowe's could use her position to terminate African-American delivery drivers. However, nothing in the record permits a non-speculative inference that Lowe's had racial motives in promoting her to Delivery Manager.   Accordingly, the Court finds that King has not established that Lowe's legitimate reasons were pretextual, or that her termination was the result of race discrimination.

**IV: CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Defendant's Motion for Summary Judgment (Docket No. 17).  A separate Order will follow.


    November 2, 2009                              /s/            
            Date                                 Alexander Williams, Jr.
                                            United States District Judge